**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DR. G. NEIL GARRETT, DDS, PC, on behalf of itself and a class, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| NINOS LAZAR, d/b/a SELECT DENTAL, INC.; 3M COMPANY; BIOMET 3I, LLC; and JOHN DOES 1-10, | ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT – CLASS ACTION**

**MATTERS COMMON TO MULTIPLE COUNTS**

**INTRODUCTION**

1.       Plaintiff Dr. G. Neil Garrett, DDS, PC,  brings this action to secure redress for the actions of defendants Ninos Lazar, d/b/a Select Dental, Inc., 3M Company ("3M"), Biomet 3I, LLC ("Biomet"), and John Does 1-10, in sending or causing the sending of unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and the common law.

2.       The TCPA expressly prohibits unsolicited fax advertising.  Unsolicited fax advertising damages the recipients.  The recipient is deprived of its paper and ink or toner and the use of its fax machine.  The recipient also wastes valuable time it would have spent on something else.  Unsolicited faxes prevent fax machines from receiving and sending authorized faxes, cause wear and tear on fax machines, and require labor to attempt to identify the source and purpose of the unsolicited faxes.

**PARTIES**

3.       Plaintiff Dr. G. Neil Garrett DDS, PC, is an Illinois professional corporation with

1

offices in Lake Villa, Illinois, where it maintains telephone facsimile equipment.

4.     Defendant Ninos Lazar conducts business as Select Dental, Inc., Select Dental

Studio, and Made in America Dental Studio at 6201 W. Howard St., Niles, IL 60714.  According

to its web site (http://hstrial-selectdentallab.homestead.com/clients.html) the business includes:

    a.     "[N]ationwide service as a cosmetic specialist in all-ceramic restorations."

    b.     "We also specialize in crowns, bridges, and implants, and offer all aspects
    of implant restorations."

    c.     "Intra Oral Scanning and Cad/Cam Services . . . Finally, Digital
    Impression Systems That Fits Your Practice … and Your Budget.   Designed to
    replace the uncomfortable and imprecise method of conventional impression
    taking, the Intra Oral digital impression systems are a exciting new technology
    that is light years ahead of it's time.  We offer connections to ALL major IOS
    systems . . . ."

5.     The web site lists 3M and Biomet as products that Select Dental works with.

6.     There was an Illinois corporation called Select Dental, Inc., prior to the

events at issue, but Lazar allowed its standing to lapse, while continuing to conduct the same

business.

7.     Defendant 3M Company ("3M") is a corporation chartered under Delaware law

with principal offices at 3M Center, St. Paul, MN 55144.  It does business in Illinois.  Its

registered agent and office is CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago,

IL 60604.

8.     3M, through its ESPE Dental Products division, manufactures products

and equipment for use by dentists, including adhesives, cements, composites, curing lights,

tooth whitener, digital materials and equipment for fitting implants, crowns, and other restorative

products, glass ionomer filling, implants, and  impression materials and equipment.

9.     Biomet 3I, LLC ("Biomet") is a limited liability company organized under

2

Florida law with principal offices at 4555 Riverside Drive, Palm Beach Gardens, FL 33410, and 56 East Bell Drive, Warsaw, Indiana 46582. It does business in Illinois. Its registered agent and office is Corporate Creations Network, 1443 W. Belmont, Chicago, IL 60657.

10.     Biomet "is one of the largest orthopedic medical device companies in the United States". It designs, manufactures and markets a comprehensive range of both surgical and non-surgical products used primarily by orthopedic surgeons and other musculoskeletal medical specialists. Among other things, it produces dental implants.

11.     Defendants John Does 1-10 are other natural or artificial persons that were involved in the sending of the facsimiles described below. Plaintiff does not know who they are.

**JURISDICTION AND VENUE**

12.     This Court has jurisdiction under 28 U.S.C. §§1331 and 1367. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 751-53 (2012); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005).

13.     Personal jurisdiction exists under 735 ILCS 5/2-209, in that defendants' actions occurred within the state of Illinois.

14.     Venue in this District is proper for the same reason.

**FACTS**

15.     On or about May 17, 2013, plaintiff Dr. G. Neil Garrett, DDS, PC, received the five-page unsolicited fax attached as Exhibit A on its facsimile machine.

16.     Discovery may reveal the transmission of additional faxes as well.

17.     The header on the fax states it is sent by Ninos Lazar.

18.     The faxes invite the recipient to attend a free seminar "covering the latest in digital (CAD/CAM) impression taking techniques."

19.     The seminar was presented by Lazar, 3M and Biomet.

20.     The persons to be conducting the seminar included Meredith Hayes, a

3

sales representative of Biomet, and Carrie Woods, a sales representative of 3M.

21.     3M and Biomet produce CAD/ CAM scanners, as well as components and materials for the dental products prepared from the digital impressions.

22.     According to Exhibit A, "Representatives from Biomet 3i and 3M ESPE will provide an informative and detailed overview of their scanners.  Attendees will have the opportunity to experience scanning demonstrations and there will also be a question and answer session."

23.     The purpose and intended effect of the free seminar was to create and promote demand among dentists for goods and services commercially available from Biomet and 3M.

24.     Defendants, as the entities whose products and services were the subject of the seminar, derived economic benefit from the sending of the faxes.

25.     Defendants either negligently or wilfully violated the rights of plaintiff and other recipients in sending the faxes.

26.     Plaintiff had not purchased or sought to purchase anything from any of the defendants prior to receiving the fax and had not authorized the sending of fax advertisements to plaintiff.  Plaintiff believes that 3M dental products are only available through dealers.

27.     On information and belief, the fax attached hereto were sent as part of a mass broadcasting of faxes.  It is not individually addressed and seeks attendance at an event to which multiple persons were invited.

28.     On information and belief, defendants have transmitted similar unsolicited fax advertisements to at least 40 other persons in Illinois.

29.     The fax does not contain an opt out notice as described by 47 U.S.C. §227.

30.     There is no reasonable means for plaintiff or other recipients of defendants' unsolicited advertising faxes to avoid receiving illegal faxes.  Fax machines must be left on and ready to receive the urgent communications authorized by their owners.

4

## COUNT I – TCPA

31.  Plaintiff incorporates ¶¶ 1-30.

32.  The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine ..." 47 U.S.C. §227(b)(1)(C).

33.  The TCPA, 47 U.S.C. §227(b)(3), provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**

   **(A)  an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**

   **(B)  an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**

   **(C)  both such actions.**

**If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

34.  Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.  Furthermore, plaintiff's statutory right of privacy was invaded.

35.  Plaintiff and each class member is entitled to statutory damages.

36.  Defendants violated the TCPA even if their actions were only negligent.

37.  Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

38.  Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes by or on behalf of any of the defendants

promoting goods or services or attendance at a seminar at which their goods or services were

promoted (d) which did not contain an opt out notice as described by 47 U.S.C. §227.

39. The class is so numerous that joinder of all members is impractical. Plaintiff

alleges on information and belief that there are more than 40 members of the class.

40. There are questions of law and fact common to the class that predominate over

any questions affecting only individual class members. The predominant common questions

include:

> a. Whether defendants sent unsolicited fax advertisements;
>
> b. The responsibility of each defendant for the faxes;
>
> c. The manner in which defendants compiled or obtained their list of fax
> numbers;
>
> d. Whether defendants thereby violated the TCPA;
>
> e. Whether defendants thereby engaged in unfair acts and practices, in
> violation of the ICFA.
>
> f. Whether defendants thereby converted the property of plaintiff.

41. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has

retained counsel experienced in handling class actions and claims involving unlawful business

practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not

to vigorously pursue this action.

42. Plaintiff's claims are typical of the claims of the class members. All are

based on the same factual and legal theories.

43. A class action is the superior method for the fair and efficient adjudication of this

controversy. The interest of class members in individually controlling the prosecution of

separate claims against defendants is small because it is not economically feasible to bring

individual actions.

44. Several courts have certified class actions under the TCPA. *Sadowski v. Med1*

*Online, LLC,* 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *CE Design Ltd. v Cy's Crabhouse North, Inc.,* 259 F.R.D. 135 (N.D.Ill. 2009); *Targin Sign Sys. v Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894 (N.D.Ill. 2010); *Garrett v. Ragle Dental Lab, Inc.,* 10 C 1315, 2010 U.S. Dist. LEXIS 108339, 2010 WL 4074379 (N.D.Ill., Oct. 12, 2010); *Hinman v. M & M Rental Ctr.,* 545 F.Supp. 2d 802 (N.D.Ill. 2008); *Clearbrook v. Rooflifters, LLC*, 08 C 3276, 2010 U.S. Dist. LEXIS 72902 (N.D. Ill. July 20, 2010) (Cox, M.J.); *G.M. Sign, Inc. v. Group C Communs., Inc.*, 08 C 4521, 2010 U.S. Dist. LEXIS 17843 (N.D. Ill. Feb. 25, 2010); *Holtzman v. Turza*, 08 C 2014, 2009 U.S. Dist. LEXIS 95620 (N.D.Ill., Oct. 14, 2009); *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642 (W.D.Wash. 2007); *Display South, Inc. v. Express Computer Supply, Inc.,* 961 So.2d 451, 455 (La. App. 1st Cir. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.,* 992 So. 2d 510 (La. App. 1st Cir. 2008); *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Ok. App. 2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. (App.) 94, 50 P.3d 844 (2002); *Core Funding Group, LLC v. Young*, 792 N.E.2d 547 (Ind.App. 2003); *Critchfield Physical Therapy v. Taranto Group, Inc.*, 293 Kan. 285; 263 P.3d 767 (2011); *Karen S. Little, L.L.C. v. Drury Inns. Inc.,* 306 S.W.3d 577 (Mo. App. 2010); *Travel 100 Group, Inc. v. Empire Cooler Service, Inc.,* 03 CH 14510 (Cook Co. Cir. Ct., Oct. 19, 2004); *Rawson v. C.P. Partners LLC*, 03 CH 14510 (Cook Co. Cir. Ct., Sept. 30, 2005); *Nicholson v. Hooters of Augusta, Inc.*, 245 Ga.App. 363, 537 S.E.2d 468 (2000).

       45.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

       WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

       a.    Actual damages;

       b.    Statutory damages;

       c.    An injunction against the further transmission of unsolicited fax advertising;

7

        d.      Costs of suit;

        e.      Such other or further relief as the Court deems just and proper.

## COUNT II – ILLINOIS CONSUMER FRAUD ACT

46.     Plaintiff incorporates ¶¶ 1-30.

47.     Defendants engaged in unfair acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by sending unsolicited fax advertising to plaintiff and others.

48.     Unsolicited fax advertising is contrary to the TCPA and also Illinois law. 720 ILCS 5/26-3(b) makes it a petty offense to transmit unsolicited fax advertisements to Illinois residents.

49.     Defendants engaged in an unfair practice by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to recipients of their advertising.

50.     Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

51.     Defendants engaged in such conduct in the course of trade and commerce.

52.     Defendants' conduct caused recipients of their advertising to bear the cost thereof. This gave defendants an unfair competitive advantage over businesses that advertise lawfully, such as by direct mail. For example, an advertising campaign targeting one million recipients would cost $500,000 if sent by U.S. mail but only $20,000 if done by fax broadcasting. The reason is that instead of spending $480,000 on printing and mailing his ad, the fax broadcaster misappropriates the recipients' paper and ink. "Receiving a junk fax is like getting junk mail with the postage due". Remarks of Cong. Edward Markey, 135 Cong Rec E 2549, Tuesday, July 18, 1989, 101st Cong. 1st Sess.

53.     Defendants' shifting of advertising costs to plaintiff and the class members in this manner makes such practice unfair. In addition, defendants' conduct was contrary to public policy, as established by the TCPA and Illinois statutory and common law.

54.     Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

55.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons in Illinois (b) who, on or after a date 3  years prior to the filing of this action (815 ILCS 505/10a), (c) were sent faxes by or on behalf of any of the defendants promoting goods or services or attendance at a seminar at which their goods or services were promoted (d) which did not contain an opt out notice as described by 47 U.S.C. §227.

56.     The class is so numerous that joinder of all members is impractical.  Plaintiff alleges on information and belief that there are more than 40 members of the class.

57.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common questions include:

   a.     Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

   b.     Whether defendants thereby violated the TCPA;

   c.     Whether defendants thereby engaged in unfair acts and practices, in violation of the ICFA.

   d.     Whether defendants thereby converted the property of plaintiff.

58.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

59.     Plaintiff's claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

60.     A class action is the superior method for the fair and efficient adjudication of this

controversy.  The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

61.     Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

a.      Appropriate damages;

b.      An injunction against the further transmission of unsolicited fax advertising;

c.      Attorney's fees, litigation expenses and costs of suit;

d.      Such other or further relief as the Court deems just and proper.

## COUNT III – CONVERSION

62.     Plaintiff incorporates ¶¶ 1-30.

63.     By sending plaintiff and the class members unsolicited faxes, defendants converted to their own use ink or toner and paper belonging to plaintiff and the class members.

64.     Immediately prior to the sending of the unsolicited faxes, plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

65.     By sending the unsolicited faxes, defendants appropriated to their  own use the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable.  Such appropriation was wrongful and without authorization.

66.     Defendants knew or should have known that such  appropriation of the paper and ink or toner was wrongful and without authorization.

67.     Plaintiff and the class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose.   Plaintiff and each class member thereby

10

suffered damages as a result of receipt of the unsolicited faxes.

68. Defendants should be enjoined from committing similar violations in the future.

**CLASS ALLEGATIONS**

69. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons (b) who, on or after a date 5 years prior to the filing of this action, (c) were sent faxes by or on behalf of any of the defendants promoting goods or services or attendance at a seminar at which their goods or services were promoted (d) which did not contain an opt out notice as described by 47 U.S.C. §227.

70. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

71. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

> a. Whether defendants engaged in a pattern of sending unsolicited fax advertisements;
>
> b. Whether defendants thereby violated the TCPA;
>
> c. Whether defendants thereby committed the tort of conversion;
>
> d. Whether defendants thereby engaged in unfair acts and practices, in violation of the ICFA.
>
> e. Whether defendants thereby converted the property of plaintiff.

72. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

73. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

11

74.    A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

75.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter  judgment in favor of plaintiff and the class and against defendants for:

a.    Appropriate  damages;

b.    An injunction against the further transmission of unsolicited fax advertising;

c.    Costs of suit;

d.    Such other or further relief as the Court deems just and proper.

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Michelle R. Teggelaar
Julie Clark
Heather A. Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


/s/ Daniel A. Edelman
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)